UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND D. BUSHNER, | ) | CASE NO. 1:22-cv-484 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TIM McCONAHAY, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Raymond D. Bushner, an Ohio inmate, filed a prisoner civil rights complaint against personnel at Mansfield Correctional Institution ("MCI"), where Plaintiff previously was incarcerated. (Doc. No. 1.) Certain defendants were dismissed in a prior Order. (Doc. No. 3.) Plaintiff filed a motion for summary judgment. (Doc. No. 24.) Defendants Davis Albright and Kevin Shepard filed a motion for summary judgment. (Doc. No. 26.) Those motions have been fully briefed. (Doc. Nos. 27-28, 30-32.)[1] For the reasons that follow, Plaintiff's motion for summary judgment (Doc. No. 24) is DENIED. The moving Defendants' motion for summary judgment (Doc. No. 26) is GRANTED.

I. **Background**

    A. **Undisputed Facts**

At the time of the events at issue, Plaintiff was incarcerated at MCI. (Doc. No. 26 at 200.) On January 25, 2021, Plaintiff was moved to restrictive housing and placed on constant watch, also referred to by both sides as suicide watch. (Doc. No. 26-1 at 210.) Defendants

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

confirm that chemical spray was used on Plaintiff during the events of January 25th. (*Id.*; Doc. No. 26-2 at 212.)[2]

On January 26, 2021, it was determined that Plaintiff was able to go back to regular housing within MCI. (Doc. No. 26-1 at ¶¶ 5-6; Doc. No. 26-2 at ¶¶ 5-8.) Officer Kevin Shepard, MCI's Unit Manager, instructed Officer Davis Albright and Officer C. Pajot to escort Plaintiff back to a regular housing cell. (Doc. No. 24-1 at 174; Doc. No. 26-1 at ¶ 6; Doc. No. 26-2 at ¶ 7-8.) That day Plaintiff was moved from MCI's special housing to another cell. (Doc. No. 24-1 at 174; Doc. No. 31 at 235.) He was escorted by Officers Albright and Pajot. (Doc. No. 26-1 at ¶ 6; Doc. No. 26-2 at ¶ 7-8.) The Complaint names these Officers Shepard, Albright, and Pajot as defendants. (Doc. No. 1.)

In the special housing unit, Plaintiff was clothed in a suicide-prevention gown. (Doc. No. 24-1 at 174; Doc. No. 26-2 at ¶¶ 8-9.) Both sides agree that the gown came off Plaintiff just prior to the escorted walk from special housing to the destination cell. (*See* Doc. No. 24-1 at 174; Doc. No. 31 at 236; Doc. No. 26-2 at ¶¶ 8-9.) Plaintiff was naked and handcuffed during that escorted walk. (Doc. No. 24-1 at 174; Doc. No. 26-2 at ¶¶ 8, 9, 11.)

Both sides direct the Court to security camera video footage of a corridor in which the escorted walk took place. Digital footage from two cameras was filed with the Court in two .avi

---

[2] The parties differ and the record is inconclusive as to other aspects on what occurred on January 25th. Defendants say that the suicide watch was ordered because Plaintiff attempted self-harm. (Doc. No. 26-1 at ¶ 4.) Plaintiff says that the watch was ordered after he merely *said* to prison staff that he feared for his own life. (Doc. No. 31 at 237.) There also was a confrontation or incident some time on January 25th, which Plaintiff says was set in motion by prison staff's failure to provide his meal, which prompted Plaintiff to start banging on his cell door. (*Id.* at 235.)

files – which were labeled "Angle 1" and "Angle 2" in their respective filenames. (*See* Doc. Nos. 27, 28.)

Angle 1 shows the following: At timestamp 06:30, one officer in a lighter colored shirt moved outside of camera view when he walked from the corridor and went into the special housing unit. Another officer in a darker colored shirt walked behind him. (*See id.* Angle 1 at 06:30.)[3] Angle 2 shows that this officer in the darker colored shirt did not go inside the special housing unit. (*See id.* Angle 2 at 06:31-06:41.) He stood by the doorway that separated the special unit from the corridor. (*Id.*) At timestamp 06:42, Plaintiff walked out from the special housing unit into the corridor – coming into camera view of both Angle 1 and Angle 2. (*Id.* Angle 1 at 06:42, Angle 2 at 06:42.) Plaintiff's hands were cuffed behind his back. (*Id.* Angle 1 at 06:43.) Immediately behind Plaintiff was the officer in the lighter colored shirt, who had one hand rested on Plaintiff's left arm or back as they walked. (*Id.* at 06:44.)

Angle 2 shows the officer in the darker colored shirt stepped back from the doorway as Plaintiff and the hands-on officer emerged from the special housing unit. (*Id.* Angle 2 at 06:41-06:43.) The officer in the darker shirt then walked a few steps behind them. (*Id.* Angle 1 at 06:45-06:57.)

From the perspective of Angle 1, the three men walked through a corridor for fourteen seconds – moving from the right (from special housing) toward the left (going toward regular housing).[4] Plaintiff and the hands-on officer then moved outside of camera view as they went

---

[3] The timestamp citations refer to particular points in the video footage clips that were filed with the Court in .avi electronically stored format. (*See* Notice of Manual Filing, Doc. Nos. 27, 28.)

[4] The perspective of Angle 2 is limited. The camera was positioned nearer to the doorway to regular housing. Angle 2 shows Plaintiff and the officers approaching head-on as they walked from special housing. (*See* Doc. Nos. 27, 28 Angle 2 at 06:42-06:55.)

3

into another hallway for regular housing. (*Id.* Angle 1 at 06:55.) The officer following them remained by the doorway and in camera view for ten seconds before he also went into the special housing unit. (*Id.* at 06:55-07:05.)

No other MCI personnel or inmates are shown in any of the security camera video footage from Angle 1 or Angle 2. (Doc. Nos. 28, 28.) Plaintiff is seen walking. He does not walk with a limp or in a manner suggesting physical injury. (*See id.*) No physical struggles are shown in the footage. (*Id.*) At no point do the men appear to pause, slow down, or speed up. (*Id.*) The footage shows no talking by any of the three men during the escorted walk in the corridor. (*Id.*) The footage captures three men walking. (*Id.*)

For about thirty seconds the two officers were in the regular housing unit and off camera view. (*Id.* at 07:05-07:39.) Then the officer in the lighter colored shirt came into camera view as he emerged from the regular housing unit, followed by the officer in the darker shirt. (*Id.* at 07:40, 07:42.) Plaintiff does not claim that he was physically assaulted after the escorted walk by either officer while in the regular housing unit. (*See* Doc. No. 24 and attachments; *cf.* Doc. No. 24-1 at 178.)

The affidavit of Officer Albright recounts that once in the regular cell, Plaintiff yelled and would not allow the cuffs to be removed. (Doc. No. 26-2 at 213 ¶ 11.) He demanded to speak to the Warden. (*Id.*) The two officers left Plaintiff in the regular cell. (*Id.*; *see also* Doc. Nos. 27, 28 Angle 1 at 07:40-07:58 and Angle 2 at 07:48.)

4

### B. Procedural History

On March 28, 2022, Plaintiff filed suit in this Court naming several MCI employees as defendants. (Doc. No. 1.) On July 18, 2022, the Court entered a Memorandum Opinion and Order pursuant to 28 U.S.C. § 1915(e) dismissing claims against Tim McConahay, the MCI Warden; Lisa Booth, the Institutional Inspector; and Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Correction. (Doc. No. 3.) As a result, only Defendant Officers Shepard, Albright, and Pajot remain.

Plaintiff moved for default judgment against Officer Pajot. (Doc. No. 14.) That motion was denied. (Doc. No. 33.) The Order indicated that after resolving the summary judgment motions, the Court would revisit whether Plaintiff has a reasonable opportunity to prevail on the merits against Officer Pajot, pursuant to 42 U.S.C. § 1997e(g)(2). (*Id.* at 246.)

### C. Constitutional Claims at Issue

Plaintiff contends that Defendants violated the Eighth Amendment prohibition on cruel and unusual punishment. (Doc. No. 24-1 at 174.) Plaintiff specifically relies on security video footage, which he says shows plaintiff being forced from his holding cell fully naked, while handcuffed, and made to parade in full view of other inmates and staff. (*Id.*) Under Defendant Shepard's direct order, Busher says, Officers Albright and Pajot stripped off Plaintiff's suicide prevention gown with such force that it seriously injured his back. Plaintiff was then forced to walk fully nude while handcuffed. (*Id.*)

Plaintiff also claims that Defendants engaged in retaliation prohibited by the First Amendment. (*Id.* at 176-77.) Plaintiff contends that on the day before the escorted walk, he was sprayed with mace by Officer Sirilla solely for banging on his cell door and requesting medical attention. (*Id.*) To Plaintiff, those events from the day before were what he believes motivated

5

Officer Shepard the next day to direct the escorting officers to strip and sexually assault Plaintiff. (*Id.*) "Retaliation for the exercise of constitutional rights is itself a violation of the constitution," Plaintiff emphasizes. (*Id.*)

## II. Law and Analysis

Plaintiff seeks relief under Section 1983 for the constitutional violations of cruel and unusual punishment under the Eighth Amendment and retaliation under the First Amendment.

### A. Standard of Review

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party bears the burden of showing that no genuine issues of material fact exist." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mining Mach., Inc. v. Copley*, 145 F. App'x 149, 152 (6th Cir. 2005) ("The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.").

A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

6

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Queen v. City of Bowling Green, Kentucky*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted). "[O]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.*; *see also Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.,* 395 F.3d 338, 342 (6th Cir. 2005).

A party asserting or disputing a fact must cite evidence in the record or show that the record establishes either the absence or the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c) and (e). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014); *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne*, 767 F.3d at 530.

"The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948). "It is true

7

that both parties seek to resolve this case through the vehicle of cross-motions for summary judgment, but the standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

When a plaintiff moves for summary judgment on its own claims, for which it carries the burden of persuasion at trial, the burden is high. The plaintiff must show the absence of material fact disputes on all of the essential elements of its claim. *See generally Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012) (citations and quotations omitted); *accord Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Use of Security Camera Video Footage

Plaintiff urges that if a party's account of events is blatantly contradicted by video footage, such that no jury could accept the party's account given the video evidence, then the video should control for purposes of summary judgment. (Doc. No. 24.) Plaintiff is generally correct. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The video footage does not show any other inmate or staff watching as he was escorted without clothing. (Doc. Nos. 27, 28 Angle 1 at 06:42-06:55 and Angle 2 at 06:42-06:55.) So there is no video support for Plaintiff's claim that he was visible to and paraded in front of others. (*See* Doc. No. 24-1 at 174.) If there were other inmates looking on, that could have occurred only during the "off camera" time after Plaintiff and the officers left the visible corridor. Less than a minute elapsed from the point that Plaintiff and the escorts walked into regular housing and out of the camera's view to the point when the two officers reappeared on camera to descend stairs and leave the area. (Doc. Nos. 27, 28 at 6:56 to 7:42.)

The video confirms several material points. The video confirms the absence of the suicide-prevention gown. (*See id.*) It confirms that he was escorted while handcuffed. (*Id.*) It confirms Plaintiff and the two officers walking at a reasonable and consistent pace. (*Id.*) It confirms that Plaintiff walked at a normal pace, upright, and without any noticeable limp or sign of physical injury. (*Id.*)

      **C.    Eighth Amendment**

"Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quotation omitted); *cf. Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain).

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the

9

> Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock. The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.

*Whitley*, 475 U.S. at 319.

To show that "conditions of confinement constitute 'cruel and unusual punishment' prohibited by the Eighth Amendment," a plaintiff must satisfy a two-step framework, which includes an objective and subjective component. *Reilly v. Vadlamudi*, 680 F.3d 617, 623-24 (6th Cir. 2012) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)); *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 531 (N.D. Ohio 2020).

The objective component requires the plaintiff to show that the alleged deprivation was "sufficiently serious[.]" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Routine discomforts of prison life do not suffice." *Parker v. Bowen*, No. 4:18-cv-1744, 2018 WL 6267182, at *2 (N.D. Ohio Nov. 30, 2018) (citing *Hudson v. McMillian*, 503 U.S. 1, 8, (1992)).

The subjective component requires the plaintiff to demonstrate that the defendants were deliberately indifferent to the prisoner's needs. *Wilson*, 501 U.S. at 297-302. The deliberate indifference standard is very high. *Fisher,* 484 F. 3d at 521. To demonstrate deliberate indifference, "a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health [or safety], (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010); *see also Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009).

Sexual assaults or the sexualization of an inmate can give rise to an Eighth Amendment claim. *See Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1096 (6th Cir. 2019) (collecting authorities). But neither Plaintiff's allegations, nor the video footage on which he relies, nor the other evidence in the record support the characterization of the escorted walk here as a sexual violation. No reasonable jury could deem it as such. There is no evidence to show or support a characterization of these events as "sufficiently severe" "sexual abuse." *Rafferty*, 915 F.3d at 1097. In sum, Plaintiff's characterization of this as a sexual assault finds no support in the record. (*See* Doc. No. 24-1 at 175; Doc. No. 31 at 235.)

Nor is there evidence to indicate that Defendants should have recognized some risk to health or safety from the escorted walk. Plaintiff argued that the video footage would show him being "paraded" in front of others. (Doc. No. 24-1 at 174.) But not a single other person is shown in the footage other than Plaintiff, Officer Albright, and Officer Pajot.

In any event, Plaintiff cites no Supreme Court or Sixth Circuit precedent that would render a "clearly established" right of an inmate to be free from a thirty-second unclothed walk from one cell to another. A brief lapse of privacy in jail in which an inmate is seen unclothed is not a constitutional violation. *See generally Hudson v. Palmer*, 468 U.S. 517 (1984); *Bell v. Wolfish*, 441 U.S. 520 (1979); *Mills v. City of Barbourville*, 389 F.3d 568, 579-80 (6th Cir. 2004) (holding that a female inmate did not present a cognizable Section 1983 claim based on a male prison guard briefly seeing her without her chest covered); *Pollock v. Brigano*, 720 N.E.2d 571, 576 (Ohio Ct. App. 1998) (holding that inmate's Section 1983 claim for lack of privacy in prison shower was not cognizable under the First, Eighth, or Fourteenth Amendments). Accordingly, the Defendants are entitled to qualified immunity here, even assuming the events constituted an Eighth Amendment violation – which they do not.

11

All that is left of the Eighth Amendment claim is Plaintiff's contention that prior to the unclothed walk, the officers tore away his suicide-prevention gown. Plaintiff contends he did not urinate on the gown. (Doc. No. 31 at 236.) Officer Albright contends that he did. (Doc. No. 26-2 at ¶ 8.) Plaintiff says that Defendants used force to tear away the gown and thereby injured his back. (Doc. No. 24-1 at 174.) Officer Albright says that the gown fell off. (Doc. No. 26-2 at ¶ 9.)

A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted). For two reasons, the Court holds that the fact disputes regarding the condition of the gown and how it was removed are immaterial to the outcome of the Eighth Amendment claim.

The video footage shows that the officers were in the special housing area for twelve seconds. (Doc. Nos. 27, 28 Angle 1 at 06:30 to 06:42.) Plaintiff and the two officers are then shown in the corridor. (*Id.* at 06:42-06:55.) The footage contains nothing from which a reasonable jury could infer that Plaintiff was violently attacked in the immediately preceding twelve seconds (*i.e.*, when the officers were off camera retrieving Busher from the special housing unit). (*See id.*) Plaintiff asked the Court to rely on the video footage to evaluate his claim. (Doc. No. 31 at 236.) The video shows Plaintiff walking without a limp or sign of injury.

(Doc. Nos. 27, 28 Angle 1 at 06:42-06:55) He keeps pace with the escorting officers. (*Id.*) The video shows no sign of Plaintiff being pulled, forced, or held up during the walk.[5] (*Id.*)

For these reasons, Defendants are entitled to judgment as a matter of law on the Eighth Amendment claim.

### D. Retaliation

Prison inmates can assert a retaliation claim under the First Amendment. *See generally Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018).

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.

*Nieves v. Bartlett*, 587 U.S. --, 139 S. Ct. 1715, 1722 (2019) (citations and quotations omitted); *see also Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019). "The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional . . . ." *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 527-28 (6th Cir. 2010).

> To prevail, [a plaintiff] must demonstrate . . . (1) that he engaged in constitutionally protected speech, (2) that he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech, and (3) that the protected speech was a substantial or motivating factor in the decision to take the adverse action.

---

[5] Even if the Court accepts Plaintiff's version of events that the escorting officer(s) forcible tore away the suicide-prevention gown just prior to the escorted walk, no clearly established right was violated. *Cf. Virgili v. Gilbert*, 272 F.3d 391, 393 (6th Cir. 2001). The design and purpose of a suicide-prevention gown is to be thin enough that it cannot harm an inmate. *Cf. Cooper v. Cnty. of Washtenaw*, 222 F. App'x 459, 462 n.1 (6th Cir. 2007)

13

*Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 202) (quotation omitted). A plaintiff's burden in a retaliation case is to show that the "protected activity" – here, her complaints to the officers – "was the likely reason for the adverse action." *Murray v. Cowell*, 332 F. App'x 241, 244 (6th Cir. 2009) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 527-28 (6th Cir. 2008)

To begin, the Court must identify the adverse action at issue.

The record contains discussion of Plaintiff being sprayed with a chemical on January 25, 2021. (Doc. No. 24-1 at 176-77.) Plaintiff contends that this was done by an Officer named Sirilla. (*Id.*) But Plaintiff's retaliation claim here is not based on the use of that spray. Plaintiff never named Officer Sirilla as a defendant in this case. (*See* Doc. No. 1.)

Plaintiff also refers to his placement in the suicide watch special housing unit. Plaintiff asserts that he was placed on suicide watch for stating that he was in fear for his life. (Doc. No. 31 at 237.) Plaintiff admits to saying that he was in fear for his life prior to that placement. (*See id.*) Accordingly, Plaintiff has not shown that his placement into special housing was actionable retaliation.

What remains is Plaintiff's contention that a sexual assault on January 26, 2021 was ordered for retaliatory purposes. (*See id.*) He contends that it was clearly established at the time that sexual assault may not be carried out as a means of retaliation. (*Id.* at 237-38.) As previously explained, what occurred here cannot reasonably be characterized as "sexual assault."

In opposition to Defendants' summary judgment motion, Plaintiff refers to bates-numbered documents. (*Id.* at 237.) Plaintiff does not attach those documents, nor does he explain what the documents are. (*See id.*) Defendants rejoin:

> Plaintiff cites to documents that are not part of the record in this matter. (ECF. Doc 31 PageID 237). He makes claims based on this material not in the record that are conclusory, self-serving and not supported by any evidence in the record.

14

> He presents no other evidence to the Court to support his claims. Therefore, he has not met his burden to dispute Defendant's contention that no genuine issue of material fact exists and Defendants are entitled to judgment as a matter of law.

(Doc. No. 32 at 243.)

Defendants' point is well-taken, and the Court cannot base its decision on scant references to documentary evidence not properly authenticated or presented to the Court. Such documents were neither described nor filed to become part of the record. Without evidence to substantiate his position, Plaintiff does not successfully withstand Defendant's Rule 56 motion. *See generally Jones v. Muskegon Cnty.*, 625 F.3d 935, 946-47 (6th Cir. 2010).

Plaintiff has not presented any evidence from which a reasonable jury could find that Officer Shepard ordered that Plaintiff be escorted while unclothed. Plaintiff also has not presented evidence from which a reasonable jury could conclude that the escorting officers' decision to walk Plaintiff without clothing was done at Shepard's direction or in service of some retaliatory animus. Instead, Officer Albright attests that he decided to proceed with the walk even though Plaintiff was not wearing a suicide gown because the distance to Plaintiff's cell was so short. (*See* Doc. No. 26-2 at ¶ 9.)

Finally, qualified immunity "turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Plaintiffs must identify a case with a fact pattern similar enough to have given "fair and clear warning to officers" about what the law requires. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (citing *White v. Pauly*, 580 U.S. 73 (2017)). Plaintiff identified no Supreme Court or Sixth Circuit retaliation precedent of a sufficiently factually analogous situation to what occurred here.

### E. Officer Pajot

Although Defendant Officer Pajot did not file a motion for summary judgment, the analysis above applies to him. The Complaint does not state a claim upon which relief may be granted against Officer Pajot. Plaintiff does not allege the violation of a clearly established constitutional right. Pursuant to 42 U.S.C. § 1997e(c), the Court dismisses Plaintiff's claims against Officer Pajot.

### III. Conclusion

For the reasons above, Plaintiff's motion for summary judgment is DENIED. (Doc. No. 24.) The moving Defendants' motion for summary judgment is GRANTED. (Doc. No. 26.) The Court DISMISSES Plaintiff's claims against Officer Pajot. This case is DISMISSED with prejudice. The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

**Date:** March 21, 2024

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE